## BURKE v. UNION COAL & COKE CO.

### (Circuit Court of Appeals, Eighth Circuit. November 8, 1907.)

#### No. 2,544.

1. MASTER AND SERVANT—ASSUMPTION OF RISK.

An employé who was at work in a tunnel from 5½ to 7 feet in height, repairing the track of a railroad operated by electricity by means of a trolley which ran on a wire suspended 5 or 6 inches beneath the right side of the roof of the tunnel, who had been warned to look out for the wire, that contact with it might kill him, and who had been once knocked down by electricity from it, stopped from his work of driving a wedge under a rail beneath the wire, arose from his stooping position until his neck struck it and was killed by the electricity therefrom. *Held*:

The employé assumed the risk of injury from the wire by entering and continuing in the employment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574–600.]

2. SAME.

A servant, by entering or continuing in the employment of a master, assumes the risks and dangers of the employment which he knows and appreciates, and those which an ordinarily prudent and careful person of his capacity and intelligence would have known and appreciated in his situation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574–600.]

3. SAME—DEFECTS ARISING FROM NEGLIGENCE OF MASTER.

Among the risks and dangers which the servant assumes by entering or continuing in the employment without complaining of them are those which arise from defects that are obvious or readily observable through the failure of the master to completely discharge his duty to exercise ordinary care to furnish the servant with a reasonably safe place to work and with reasonably safe appliances to use.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 610–624.]

4. SAME—ESTOPPEL FROM DENYING APPRECIATION.

An employé cannot be heard to say that he did not appreciate or realize the risk or danger where the defects were obvious, and the dangers would have been apparent to an ordinarily prudent person of his intelligence and experience in his situation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 610–624.]

5. SAME—PEREMPTORY INSTRUCTION WHEN PROPER.

Where the uncontradicted evidence discloses the fact that the defects in the place or machinery or method of operation were obvious, and the danger from them apparent to an ordinarily prudent person of the intelligence and capacity of the servant, and that the servant entered upon or continued in the service without complaint of them, the defense of assumption of risk is conclusively established, there is no question for the jury, and the court should instruct them to return a verdict for the master.

[Ed. Note.—Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

Hugh Butler, for plaintiff in error.

William E. Hutton (Bruce B. McCay, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. This writ of error challenges an instruction to the jury to return a verdict for the defendant upon this state of facts:

The Union Coal & Coke Company, the defendant below, was operating a coal mine and a tunnel 2,000 feet long, which led to entries in the mine. The tunnel was from 5½ to 7 feet in height, and there was a railroad track about 7 inches above the level of the floor of the tunnel, and a wire in the right upper corner of it, by means of which and a trolley, cars, which were used to bring the coal from the mines, were moved. There was a switch, by which the electricity could be turned off of the wire when the trolley was not in use, and the wire could be charged again when desired. When the wire was charged it carried 550 volts, and contact with it was dangerous to human life. The cars upon this railroad had been operated by electricity in this way for more than a year when Michael W. Burke, who was the husband of Mary A. Burke, the plaintiff below, was employed by the defendant to assist in laying and repairing the track of the railroad on June 19, 1905. This track included not only the rails in the tunnel upon which the cars were moved by electricity, but also many thousand feet of rails in the entries in the mine and upon the surface of the ground, upon which the cars were operated by the use of mules. The foreman of the mine testified, and his testimony was not contradicted, that he warned Burke when he hired him "that his work was track work, and that it was around wire and timber and such as that, and that he would have particularly to look out for the wire; * * * that if he came in contact with it he was likely to be killed; * * * that whatever he done, to watch out for the wire, that it was dangerous, and if he got tangled up with it, it would kill him, any man—that it had 550 volts in it;" that Burke worked continuously, except upon Sundays, from the 19th to the 27th of June, that about June 23d, there was a cave in, in the tunnel, and while Burke was at work with other men removing the débris with one hand on the ferule of his shovel he permitted the latter to come in contact with this live wire, received a shock from it which knocked him down, and that when Burke told the foreman of it he told him that he "wanted him to be very careful, and keep away from the wire; that if he did not he would tangle up in it and get killed." On June 27, 1905, Burke was repairing track in the tunnel with a fellow workman named Regnier. Just prior to the accident the motor or the cars came along and Regnier stepped off the track upon the left side and Burke upon the right side to let them pass. There was a crosscut or opening at this point upon the right side of the tunnel, which extended about 30 feet, and Burke stepped into it. The live wire was suspended on hangers beneath the roof of the tunnel about six inches to the right of the right rail. As Burke went into

the crosscut to let the motor or cars pass he stooped under this wire so that he did not come in contact with it. After he had returned to his work, he was engaged in driving a wedge under the left rail when Regnier procured a heavier hammer, and asked him to step aside and let him drive the wedge. Burke stepped over to the right side of the tunnel, and straightened up so that his neck came in contact with the live wire, and the electricity immediately killed him. His widow brought this action for damages, which she alleged she suffered from the negligence of the company, because it operated its cars by electricity, because it did not protect the wire by an inverted trough, because it did not construct a tunnel of greater height. But it will not be necessary to consider these charges of negligence. The court below instructed the jury for the defendant on the ground that the evidence demonstrated the fact that Burke assumed the risk of injury from the wires, and in the consideration of this question it is not decided that there was any substantial evidence of the acts of negligence above charged, but the assumption will be indulged that the company was negligent in those particulars.

Counsel for the plaintiff contends that the judgment should be reversed because the deceased was not duly warned of his danger from the electricity upon the wire, and did not appreciate the risk of it, in that he was not told and did·not know the height of the tunnel, in that he was not told and did not know the dangerous proximity of the wire to the track, because the credibility of the foreman was a question for the jury and not for the court, and because a servant never assumes the risk of his master's negligence. Many instructive authorities have been cited, and every argument that profound learning and commanding ability could proffer, has been presented to maintain this contention. The authorities and arguments have been thoughtfully considered, but after another review of the rules and principles which govern cases of this character, which have been so often reviewed by this court, we have been forced to the conclusion, in the light of the earlier and of the later decisions, that the controlling rules are correctly declared in St. Louis Cordage Co. v. Miller, 126 Fed. 495, 508, 61 C. C. A. 477, 490, 63 L. R. A. 551, and Glenmont Lumber Co. v. Roy, 126 Fed. 524, 528, 61 C. C. A. 506, 510, in these words:

"A servant, by entering or continuing in the employment of a master without complaint, assumes the risks and dangers of the employment which he knows and appreciates, and also those which an ordinarily prudent person of his capacity and intelligence would have known and appreciated in his situation.

"Among the risks and dangers thus assumed are those which arise from the failure of the master to completely discharge his duty to exercise ordinary care to furnish the servant with a reasonably safe place to work and reasonably safe appliances and tools to use.

"An employé cannot be heard to say that he did not appreciate or realize the danger where the defects are obvious, and the dangers would have been known and appreciated by an ordinarily prudent person of his intelligence and experience in his situation.

"Where the uncontradicted evidence discloses the fact that the defects in the place or in the tools were obvious, and the dangers from them would have been apparent to an ordinarily prudent person of the intelligence and the capacity of the servant, if placed in his situation, and the employé entered upon or continued in the service without complaint, the defense of assumption .of

risk is conclusively established, and the court should instruct the jury to return a verdict for the defendant."

Ample warning of the danger of the live wire was twice given the deceased by the foreman, and this warning was emphasized by a shock from it which knocked him down. The height of the tunnel and the proximity of the wire to the track were obvious. No person of ordinary prudence would have failed to observe them or to appreciate the risk from them. At the very place where the deceased was injured he had shortly before the accident stooped to pass under the wire as he went to the right of the tunnel to let the motor pass. The credibility of the foreman might have been a question for the jury if it had been inconsistent with other testimony or with the facts or circumstances in evidence, but it stood unassailed by any fact, circumstance, or testimony, and a verdict founded upon the conclusion that it was not true would have been contrary to all the evidence and without justification.

The contention that the servant never assumes the risk of the negligence of the master is untenable in the national courts. The rule established by repeated decisions of the Supreme Court is that by entering or continuing in the employment a servant assumes the risk of defects in the place and in the machinery caused by the negligence of the master, when those defects are obvious or plainly observable by a person of ordinary prudence in the servant's situation as completely as he assumes those of which he is actually aware. Texas Pacific Ry. v. Archibald, 170 U. S. 665, 672, 18 Sup. Ct. 777, 42 L. Ed. 1188; Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96.

Nor can the plaintiff recover upon the ground that the deceased did not appreciate the risk. The defects in the tunnel, in the railroad, in the wire, in its location and in the methods of the operation of the railroad and of its repair, were obvious. A servant of ordinary intelligence and prudence in Burke's situation, with the warnings he had received, could not have failed to know or to appreciate the risk which he ran from them. A servant cannot be heard to say that he did not appreciate or realize the risk or danger from defects which were readily observable, and the dangers of which would have been apparent to an ordinarily prudent person of his experience and intelligence in his situation. St. Louis Cordage Co. v. Miller, 126 Fed. 495, and cases cited at pages 511, 512, 513, 61 C. C. A. 477, 63 L. R. A. 551.

In the trial of this case the court below followed the established rules of law in giving an instruction to the jury to return a verdict for the defendant, and this judgment cannot be reversed without disregarding them.

It is accordingly affirmed.