# ST. LOUIS & S. F. R. CO. v. SNOWDEN.

No 3997.    Opinion Filed June 8, 1915.

(149 Pac. 1083.)

1.  **TRIAL—Demurrer to Evidence—Effect as Admission.** It is the settled rule that a demurrer to the evidence admits every fact which the evidence, in the slightest degree, tends to prove, and all inferences or conclusions that may be reasonably and logically drawn from the evidence.

2  **MASTER AND SERVANT—Injuries to Servant—Pleading—Federal Employers' Liability Act.** A case which, by allegation and proof, is brought within the Employers' Liability Act of April 22, 1908, 35 Stat. 65, c. 149 (U S. Comp. St. 1913, sections 8657-8665), is controlled by that act, although its provisions may not have been referred to in express terms in the pleadings, or presented at the trial.

3.  **COMMERCE—Regulation of Interstate Commerce—Liability of Employers.** In an action by an employee against an interstate carrier to recover damages for personal injuries received while engaged in interstate commerce, constitutional and statutory provisions of this state, which are in conflict with the federal Employers' Liability Act, are suspended and annulled.

4.  **MASTER AND SERVANT—Federal Employers' Liability Act—Assumption of Risk—Question for Court.** Under the Federal Employers' Liability Act, the law of assumption of risk is that of the common law, as it existed prior to the passage of said act, except where the common carrier violates the provisions of any statute enacted for the safety of its employees; and where the evidence is undisputed, and the injury not caused, as in this case, by any violation of such statutes, providing for the protection of employees, the question of assumption of risk is one of law.

5.  **MASTER AND SERVANT—Injuries to Servant—Negligence of Master—"Actionable Negligence"—Elements.** In every case involving negligence, three elements are essential to constitute actionable negligence on the part of the master, when the wrong charged is not willfully and intentionally done, viz.: (1) The existence of a duty on the part of the master to protect the servant; (2) the failure of the master to perform that duty; (3)

injury to the servant, approximately resulting from such failure —and the absence of these elements renders the petition bad on demurrer, or the evidence insufficient.

6.    SAME—Proximate Cause.    There must be causal connection between the negligence averred and the injury received to entitle plaintiff to recover.

(Syllabus by Collier, C.)

*Error from Superior Court, Garfield County;*

*Dan Huett, Judge.*

Action by G. A. Snowden against the St. Louis & San Francisco Railroad Company.  Judgment for plaintiff, and defendant brings error.  Reversed and remanded, with instructions to dismiss.

*W. F. Evans, R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*McKeever & Church* and *Gray & McVay,* for defendant in error.

Opinion by COLLIER, C.  This suit was brought by defendant in error, hereinafter called plaintiff, against plaintiff in error, hereinafter referred to as defendant, in the superior court of Garfield county, to recover damages for personal injuries, alleged to have been suffered by reason of negligence of defendant.

Plaintiff testified:  That he was employed by defendant as a brakeman, and was working on a local freight train between Vernon, Tex., and Snyder, Okla.  That, as such brakeman, it was a part of his duty to assist in unloading and loading freight handled by said train.  That prior to the 22d day of May, 1910, defendant had used four men in handling said train, but on said date it permitted one of its crew to lay off, and attempted to operate said train with a crew of three men, of which plaintiff

was one. That said train reached Davidson, Okla., on the 26th day of May, 1910, about 4 p. m., where they found some binders to be loaded. That he told the conductor that they would not load them, because they were too heavy, and the conductor said, "All right, we will not load them." The conductor then went into the depot, and, when he came out, said, "We will load them." He then told plaintiff to get inside the car. There was no one else in the car. That it was usual and customary in loading and unloading freight to have two men in the car. That, in loading this freight, they came to a heavy box of machinery, which the men on the platform walked up to where they put it in the car, and with the assistance of plaintiff put it in the car door from the platform. That plaintiff walked it back into the car, and, in walking it back, the box became overbalanced, and he caught it, and it fell over to one side of the car and caught and injured him. Plaintiff said nothing about being injured at the time, but walked the box until he got it back, and then went to the car door and told the conductor he would have to have another man in the car, and the conductor then ordered another man to go into the car, which order was obeyed. Plaintiff further testified that said box was about 18 inches wide, 12 inches deep, and 6 feet long, and weighed about 600 pounds; that he was familiar with such boxes and had handled boxes of same kind, with assistance. Plaintiff further testified that he knew what kind of box it was; that it was a box of machinery; that one good man probably could have put it in the car, but it was very seldom that one man could handle a box like that one; that he was a pretty good man at the time; that he did not call for help, because the train was short-handed, and the other men had all they could do on the

outside of the car; that he needed help on the inside of the car, and after the accident went to the car door and told them that it came pretty near getting him; that just as soon as he called for Shorty, the other brakeman, the conductor told Shorty to go in the car and help him, which Shorty did; that he certainly thought he could handle the box, or he would not have tried to; that he undertook to handle it, and did not call for anybody to come to help him; that the reason he did not call for some one to help him was because he did not think there was any use. Plaintiff further testified, describing the details of the injury received by him, including a hernia, in attempting to walk said box in said car, the pain and loss of time he suffered by reason of his injury, and introduced two physicians, who testified in support of the testimony of plaintiff as to the injuries received by him.

Upon the introduction of said evidence of plaintiff and the two physicians, plaintiff rested his case; and thereupon defendant demurred to the evidence, which demurrer was overruled by the court, to which the defendant duly excepted. Judgment was rendered in favor of plaintiff. Motion for new trial was filed and overruled, and defendant duly excepted. From said judgment, this appeal is prosecuted.

There are seven assignments of error, but, for a proper review of this case, we deem it necessary to consider only the first assignment, which is: "That the court erred in overruling the demurrer of defendant to the evidence of plaintiff."

It is the settled rule that a demurrer to the evidence admits every fact which the evidence, in the slightest degree, tends to prove, and all inferences or conclusions that may be reasonably and logically drawn from the

evidence. *Wm. Cameron & Co. v. Henderson*, 40 Okla. 648, 140 Pac. 404. Hence the vital question is: Does said evidence, in the slightest degree, tend to prove that defendant was guilty of negligence, which caused the injury suffered by the plaintiff? There are two acts of negligence alleged in the petition as a basis of recovery in this case, which are: (1) Failure to furnish a full crew; (2) failure to furnish any assistance to plaintiff in storing the freight inside the car.

In every case involving negligence, three elements are essential to constitute actionable negligence, when the wrong charged is not willfully and intentionally done, viz.: (1) The existence of a duty on the part of the master to protect the servant from the injury; (2) the failure of the master to perform that duty; and (3) injury to the servant proximately resulting from such failure. *Midland Val. R. Co. v. Williams*, 42 Okla. 444, 141 Pac. 1103. When these elements are brought together, they unitedly constitute actionable negligence, and the absence of any one of these elements renders the complaint bad, or the evidence insufficient. 29 Cyc. 419.

The pleadings and undisputed evidence offered by plaintiff show that, at the time of the injury to plaintiff, defendant was an interstate carrier of freight between points in Texas and in this state, and engaged in interstate commerce. Under the pleadings and proof, the constitutional and statutory provisions of this state were in conflict with the federal Employers' Liability Act and were suspended and annulled. *St. L. & S. F. R. Co. v. Bilby;* 35 Okla. 589, 130 Pac. 1089; *St. Louis & S. F. R. Co. v. Zickafoose*, 39 Okla. 302, 135 Pac. 406. The law of this case is unquestionably as provided by the federal Employers' Liability Act.

In the case of *Grand Trunk W. R. Co. v. Lindsay*, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168, it is held:

"A case which, by allegations and proof, is brought within the federal Employers' Liability Act of April 22, 1908 (35 Stat. 65, c. 149 [U. S. Comp. St. Supp. 1911, p. 1322])', is controlled by that act, although its provisions may not have been referred to in express terms in the pleadings or pressed at the trial."

And in the body of the opinion the court, through Chief Justice White, says:

"It is insisted in argument that, as no express claim was made under the Employers' Liability Act, therefore there was no right in the plaintiff to avail of the benefits of its provisions or in the court to apply them to the case before it. But this simply amounts to saying that the Employers' Liability Act may not be applied to a situation which is within its provisions, unless in express terms the provisions of the act be formally invoked. Aside from its manifest unsoundness, considered as an original proposition, the contention is not open, as it was expressly foreclosed in *Seaboard Air Line R. Co. v. Duvall*, 225 U. S. 477, 482 [32 Sup. Ct. 790, 56 L. Ed. 1171]".

The pleadings and the evidence in this case showing that the law of the case is the federal Employers' Liability Act, the error of the court in applying the constitutional and statutory provisions of this state to the case did not change the law of the case, even if said federal act was not pressed at the trial; and hence the rule adopted by this court (*Checotah et al. v. Hardridge et al.*, 31 Okla. 742, 123 Pac. 846, and authorities there cited), that one who tries a case below on a theory that one law applies, will not be allowed, on appeal, to insist that another law is applicable to the case; and such rule cannot be invoked in this case, as to do so would be to charge to the litigant the

want of information by, and the wrongful ruling of, the court.

The evidence shows that plaintiff was experienced in handling boxes similar to the one the falling of which produced the injury complained of, and undertook to handle the box believing that he was physically capable of doing so, and the injury resulted, not by reason of there being but two brakemen on the train, but by reason of the erroneous view of plaintiff as to his physical power, and his failure to ask for assistance to handle the box; and hence there is want of evidence (1) of the existence on the part of the defendant of a duty; (2) which it failed to perform; (3) and from which failure it proximately resulted that plaintiff was injured. The absence of any one of these elements renders the evidence insufficient upon which to predicate a judgment in this case against defendant.

There must be causal connection between the negligence averred and the injury suffered to entitle plaintiff to recover; and this rule is so well established that it is unnecessary to support same by authority. There can be no presumption of negligence from mere proof of the accident. *Chicago, R. I. & P. Ry. Co. v. Brazell,* 40 Okla. 460, 138 Pac. 794. The work was simple, and the risk and dangers obvious; and, having known the manner in which the work was to be done and the hazard which was involved, plaintiff voluntarily accepted the employment and must be deemed to have assumed the risk incident thereto. He is bound to use his eyes, to see that which is open and apparent; and, if he fails to do so, he cannot charge the consequences upon the master. Train hands assume the risk of handling heavy freight. *Walsh v. St. Paul, etc., Ry. Co.,* 27 Minn. 367, 8 N. W. 145.

Under the federal Employers' Liability Act, the law of assumption of risk is that of the common law, as it existed prior to the passage of said act, except where the common carrier violates the provisions of any statute enacted for the safety of its employees; and the assumption of risk, under the facts in this case (the injury not being caused by any violation of such act providing for the protection of employees) was a question of law for the court. *So. Pac. Ry. Co. v. Seley,* 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391.

"Where there is evidence that the risk was one assumed, and there is no conflict, it is the duty of the court to direct a verdict for defendant." (Elliott on Railroads, sec. 1297, and authorities cited.)

In 26 Cyc. 1479, it is stated:

"Where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, the question whether plaintiff assumed the risk becomes one of law for the determination of the court, and the submission of such question by the court to the determination of the jury is, of course, erroneous."

Where the uncontroverted evidence discloses the fact, as it does in this case, that the danger was apparent to an ordinarily prudent person, and that the services were rendered without complaint, the defense of assumption of risk is conclusively established, and there is no question for the jury, and the court should instruct the jury to return a verdict for the master. *Burke v. Union Coal & Coke Co.,* 157 Fed. 178, 84 C. C. A. 626.

Plaintiff rests his case wholly upon (1) failure of the defendant to furnish a full crew; (2) failure to furnish any assistance to plaintiff in storing the freight inside the car. He was an experienced man, of full age, capable of judging of what number of employees was necessary to

safely do the work, and, if there were an insufficient number, he knew it. The work was simple and the risk and dangers obvious, and he must be deemed to have assumed the risk incident thereto. *So. Kan. Ry. Co. v. Drake*, 53 Kan. 1, 35 Pac. 825.

In the case of *So. Kan. Ry. Co. v. Drake, supra*, it is said:

"We only follow in the path of authority in holding that an employee, by voluntarily remaining in the service, with full knowledge * * * of the service, assumes the risk of such dangers, and absolves the employer from * * * damages, in case of injury."

The evidence in this case fails to show any causal connection between the negligence complained of and the injury received, and exonerates defendant from liability; and when to this failure to show actionable negligence is added that the risk was assumed by plaintiff, and that such assumption of risk, under the evidence in this case, was a question of law, it clearly appears that the court erred in overruling the demurrer of defendant to the evidence.

For the error pointed out, this cause should be reversed and remanded, with instruction to dismiss the same.

By the Court: It is so ordered.