## CHICAGO, R. I. & P. R. CO. v. JACKSON.

No. 8022—Opinion Filed Oct. 24, 1916.

(160 Pac. 736.)

**1. Master and Servant—Injuries to Servant—Assumption of Risk—Employers' Liability Act.**

In an action brought by a servant under the federal Employers' Liability Act (Acts April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, secs. 8657-8665]), for damages for personal injuries arising from the negligence of the master, where the negligence alleged as causing or contributing to the injury does not constitute a violation of any of the federal statutes enacted for the safety of the employe, the defense of assumption of the risk as it existed at common law is open to the master.

**2. Same—Jury Question.**

In such cases the provisions of the Constitution of Oklahoma (Const. art. 23, sec. 6), requiring the submission of questions of assumption of the risk to a jury, do not apply.

**3. Same—Directed Verdict—Propriety.**

Where in such cases all the evidence, including that of plaintiff himself, shows a clear case of assumption of the risk, it is error to sustain a verdict for the plaintiff.

(Syllabus by Burford, C.)

Error from District Court, Comanche County; Cham Jones, Judge.

Action by Samuel Jackson against the Chicago, Rock Island & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

C. O. Blake and R. J. Roberts, for plaintiff in error.

J. A. Diffendaffer, for defendant in error.

Opinion by BURFORD, C. This was an action for damages for personal injuries brought by Samuel Jackson against the Chicago, Rock Island & Pacific Railway Company. The cause is conceded by all parties to be brought under and to be governed by the provisions of the federal Employers' Liability Act. There is little or no conflict in those portions of the testimony material to a decision here. It appears that the plaintiff was one of a number of men engaged in loading rails upon a flat car. There were about

80 of these rails. Four or five of them were more or less bent or crooked. These crooked rails were loaded last. The method of loading was that stakes were placed at the west end and also upon the farther side of the car. Plaintiff and his fellow workmen then lifted the rail and placed the end behind the stakes on the west end of the car, and then threw the east end upon the car. When one of the crooked rails was so thrown, it bounded back and injured one of the muscles of plaintiff's leg. The negligence alleged is that no stake was placed at the east end of the car to prevent the rail from falling back and off the car. There was evidence that the method employed in loading these rails was the usual and customary method employed in this section. There was no evidence that the placing of a stake at the east end of the car would make such work more safe. We are asked by the defendant in error to say from common knowledge and experience that a stake at both ends of the car would constitute a safer method of loading than that employed in the instant case. Doubtless such a stake would have probably prevented this particular injury, but whether placing a stake at each end of the car would render loading rails from the side generally more safe is an entirely different question. Obviously in loading from the side of the car—and there is no evidence that any other place of loading was available or more safe, if available—one end of the rail would be shoved behind the stake at one end of the car, but the same could not be true when the other end was loaded. There, if a stake be placed at both ends of the car, the rail must necessarily be lifted up and over the stake, and in handling heavy steel rails we are not at all sure that such method might not be fraught with more danger than the one here employed. Assuming, however, without deciding, that there was evidence to sustain the jury's finding of negligence, it seems the plaintiff must fail upon another ground. It appears from all the testimony that plaintiff was a man of mature years; that he had worked as a section hand, taking up and laying rails upon the Cotton Belt Railway, and upon the Rock Island, and for other roads in other kinds of railway work; that he knew that the rails they were loading might fall back. Plaintiff testified:

"Q. But you yourself knew they were liable to fall back and you were guarding against that? A. Yes, sir."

If it were negligence to fail to provide a stake at the east end of the car, that fact was as open and obvious to the plaintiff as to any one else. Clearly from his own testimony he knew that the rails might fall back and injure him. He knew and appreciated the risk arising from the alleged negligence, and, knowing it, went ahead with the work without protest. Nothing could more clearly establish the defense of assumption of the risk as known at common law. This defense comprehends, not only the assumption of the risks ordinarily incident to the employment, but also the risks arising from the master's negligence in providing a safe place to work after the—

"employe becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. * * * When the employe does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employe assumes the risk, even though it arise out of the master's breach of duty." Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 61 C. C. A. 477, 63 L. R. A. 551; Gila Valley G. & N. R. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521, and cases cited.

This cause being brought under the federal Employers' Liability Act, and there being no contention that the failure to provide the stake was a violation of the Safety Appliance Act, or any other federal statute, "enacted for the safety of employes" the defense of assumption of the risk as it existed at common law was open to the carrier. 35 U. S. Stat. at L. p. 65; Seaboard Air Line v. Horton, supra; St. L. & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083; Southern R. Co. v. Crockett, 234 U. S. 725, 34 Sup. Ct. 897, 58 L. Ed. 1564.

Whatever may be the apparent force of the contention that the provision of the Oklahoma Constitution (Const. art. 23, sec. 6), requiring the submission of the defense of assumption of the risk as a question of fact to the jury, applies to cases such as the present one, upon the theory that the right to the defense is preserved under such provision, and only the method of determining it varied thereby, and of the reasoning by analogy from the decision in Minn. & St. L. R. Co. v. Bombolis, 241 U. S. 211, 36 Sup. Ct. 595, 60 L. Ed. 961, and of St. L. & S. F. R. Co. v. Brown, 241 U. S. 223, 36 Sup. Ct. 602, 60 L. Ed. 966, the decision of this court in St. L. & S. F. R. Co. v. Snowden, supra, is conclusive that these provisions cannot affect a suit brought under the federal statute, upon the ground that if the defense

permitted is "that of the common law" (St. L. & S. F. R. Co. v. Snowden, supra), then in cases where the evidence is undisputed and the circumstances permit of but one conclusion, the question must be decided by the court as a matter of law, and not by the jury as a matter of fact, since such is the common law, and such must be the result in our courts in these cases where the federal act creating the liability likewise allows the common-law defense (St. L. & S. F. R. Co. v. Snowden, supra; Toledo, S. L. & W. R. Co. v. Slavin, 236 U. S. 454, 35 Sup. Ct. 306, 59 L. Ed. 671; So. Pac. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391; Burke v. Union Coal Co., 157 Fed. 178, 84 C. C. A. 626; 26 Cyc. 1479, and cases cited).

In this cause the court submitted the question of assumption of the risk to the jury. The plaintiff's evidence clearly established the defense. Under the doctrine of the Snowden Case the cause ought not to have been submitted to the jury. Having been submitted, it was error to sustain a verdict for the plaintiff.

For the reasons given, the cause is reversed, for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.