## ST. LOUIS - S. F. R. CO. v. STUART.

No. 25173.   June 4, 1935.

Rehearing Denied July 16, 1935.

J. W. Jamison and Cruce, Franklin & Satterfield, for plaintiff in error.

Simons, McKnight, Simons, Mitchell & McKnight, for defendant in error.

PER CURIAM.  This action was commenced by defendant in error, hereinafter referred to as plaintiff, against plaintiff in error, hereinafter referred to as defendant, by plaintiff filing his petition in the district court of Garfield county, Okla., on the 13th day of July, 1932, wherein it is alleged, stated briefly, that plaintiff was in the employ of defendant as a freight train conductor, and was employed as such by defendant on September 18, 1931, and had been so employed since 1919, and was 54 years of age and a strong, able-bodied man in good health; that on said date he received injuries from having his head crushed by being thrown into the opening of a door of a merchandise car on the train under the control of plaintiff as conductor, which door closed upon his head with extreme violence and seriously injured him, rendering him unconscious, and thereafter necessitating his remaining in a hospital for many weeks and causing plaintiff much pain and

suffering and injury. That at the time he was earning as such conductor about $200 per month, and as a result of said injuries was entirely unfit for work and incapacitated therefor; that said train of said defendant was engaged in interstate commerce, and the action is instituted and being maintained under and by virtue of the laws of the United States prescribing the liability of common carriers by railroad while engaged in interstate commerce; that he was thrown into said doorway by the negligent application of an excessive amount of power to the engine by the engineer in charge thereof and by reason of the negligence of the defendant in using the freight car with a steel door thereon which would slide upon its bearings and track so that it moved very easily back and forth, and the sudden jerk caused by the application of such power by the engineer caused such door to slide rapidly and quickly backward, thereby closing the door, in which movement the head of plaintiff was crushed as therein alleged.

Said petition further states:

"That the accident and resulting injuries to plaintiff were directly and proximately caused by the actionable negligence of the defendant railroad company, its servants, agents, and employees, as hereinbefore set forth, and by reason of the negligence of the defendant in using and employing the freight car with the steel door thereon which would slide upon its bearing and track in the manner hereinbefore set forth, all of which negligent acts concurring together directly and proximately caused and contributed to the accident and resulting injuries to this plaintiff.

"By reason of the facts aforesaid, the plaintiff has been and is damaged by the fault of said defendant in the sum of $40,-000.

"Wherefore, plaintiff demands judgment against the said defendant for the sum of $40,000, and for the costs of this action."

The answer filed by defendant to said petition consisted of a general denial, contributory negligence of plaintiff, and assumption of risk in that plaintiff had been employed as conductor by defendant for a long time prior thereto and that said injury to plaintiff, if any occurred, was the result of the ordinary dangers incident to and arising from plaintiff's said employment, and that said danger incident to plaintiff's employment was a danger assumed by him when he entered the employment of defendant; and further, in substance, that the dangers and risks created by the negligence of the defendant, if any, as described in plaintiff's petition, were apparent to plaintiff and known to him and were understood and appreciated by him, or could have been understood and appreciated by him by the use of ordinary care, and, therefore, such risks and dangers created by such negligence, if any existed, were assumed by plaintiff, who was thoroughly familiar with the conditions created by the negligence of defendant, if any existed, and that plaintiff cannot recover by reason thereof.

Plaintiff replied, denying every allegation in the new matter contained in the answer of defendant.

It was stipulated in writing between the parties that at the time plaintiff was injured both plaintiff and defendant were engaged in interstate commerce and that the action and the rights of both parties are governed by the Federal Employers' Liability Act of the United States.

Trial before a jury was had in April, 1933, and upon the conclusion of plaintiff's evidence defendant filed its demurrer to the evidence of the plaintiff, which was overruled by the court and excepted to by defendant; at the close of all the evidence offered by both parties the defendant filed its motion in writing for a directed verdict in its favor, which motion was overruled by the court and defendant excepted; after submission of the case to the jury, it returned its unanimous verdict for $10,000 in favor of plaintiff, and thereafter motion for new trial was filed and overruled, and appeal taken to this court.

This action is brought under and governed by the applicable provisions of what is commonly termed the Federal Employers' Liability Act (Act of April 22, 1908 c. 149, secs. 1, 3, 4, 6, 35 Stat. 65, 66, USC, tit. 45, secs. 51, 53, 54, and 56), establishing the rights, obligations, and liabilities of common carriers by railroad while engaged in interstate commerce for injuries received by their employees while employed by such carriers in such commerce. Section 51 provides, in substance, that the employer shall be liable to such injured employee "* * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. * * *"

Section 53, with reference to contributory negligence of such employee, provides:

" * * * The fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee * * *"

—with a proviso that contributory negligence shall not apply where the violation by the carrier of any statute enacted for the safety of employees contributed to such injury.

Section 54, with reference to assumption of risk by such employee, provides:

"* * * Such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury * * * of such employee."

Section 56 provides, in substance, that action must be brought within two years from the day the cause of action accrued, and the courts of the United States and of the several states are given concurrent jurisdiction of actions brought under such chapter.

It is well settled by prior decisions of this court and of the Supreme Court of the United States that in an action brought to recover under this statute the rights and obligations of the parties depend upon its terms and provisions, and applicable principles of common law as interpreted and applied in the federal courts, as that statute, as interpreted by the Supreme Court of the United States, is the supreme law to be applied by all courts, federal and state, and all state constitutional and statutory provisions which are in conflict with said federal act are suspended and annulled. Mondou v. New York, N. H. & H. R. Co., 223 U. S. 1, 56 L. Ed. 327; Chesapeake & O. R. Co. v. Kuhn, 284 U. S. 44, 76 L. Ed. 157; St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 P. 1083; Pryor v. Chicago, R. I. & P. Ry. Co., 170 Okla. 158, 39 P. (2d) 563.

It is essential, for an injured employee to recover thereunder against such common carrier, that it be shown by proper proof that his injury resulted in whole or in part from the negligence of officers, agents, or employees of such carrier, and that such negligence was either the sole or concurring cause of the injury.

In Atchison, T. & S. F. Ry. Co. v. Toops, 281 U. S. 351, 74 L. Ed. 896, it was said:

"But proof of negligence alone does not entitle the plaintiff to recover under the Federal Employers' Liability Act. The negligence complained of must be the cause of the injury. The jury may not be permitted to speculate as to its cause, and the case must be withdrawn from its consideration unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer. * * *

"If allowed to sustain the verdict, it would remove trial by jury from the realm of probability, based on evidence, to that of surmise and conjecture."

See, also, Atlantic Coast Line R. Co. v. Powe, 283 U. S. 401, 75 L. Ed. 1142.

With reference to the construction to be given to the word "negligence," it was held in Jamison v. Encarnacion, 281 U. S. 635, 74 L. Ed. 1082, that the act is intended to stimulate carriers to greater diligence for the safety of their employees and of the persons and property of their patrons and that the term "negligence" is to be construed liberally to fulfill the purposes for which it was enacted, and may be read to include all the meanings given to it by courts and within the word as ordinarily used, as "negligence" is a word of broad significance and may not readily be defined with accuracy.

The Supreme Court of the United States, on reviewing the judgment of a state court rendered under the act, will give special consideration to the facts in order to protect interstate carriers against unwarranted judgments; to warrant recovery thereunder negligence and its causal connection with the injury must be adequately established. Atchison, T. & S. F. R. Co. v. Saxon, 284 U. S. 458, 76 L. Ed. 397. And in order to permit recovery the negligence complained of must be shown by evidence from which the inference may reasonably be drawn to have been the cause of the injury. Northwestern P. R. Co. v. Bobo, 290 U. S. 499, 78 L. Ed. 462.

In Gulf, C. & S. F. Ry. Co. v. Scroggins, 161 Okla. 294, 18 P. (2d) 873, this court said, with reference to recovery in an action brought under said act, as follows:

"Actionable negligence in such case as this is said to exist: (1) When there exists a duty on the part of the employer to the employee; (2) which it failed to perform; (3) and from which failure it proximately resulted that plaintiff was injured. The absence of any one of these elements renders the evidence insufficient upon which to predicate a judgment against the employer."

The record in this case, stated briefly, shows that plaintiff, from 1919 to September 18, 1931, had been a conductor in charge of the operation of freight trains for the defendant, and on said last-named date was in charge of a train running between Arkansas City, Kan., and Beaumont, Kan., and that he was 54 years of age, and in-

jured the morning of said September 18th by having his head crushed by the closing of a sliding door on one of the cars on said train, called the "merchandise car," as a result of which he was seriously injured.

Plaintiff testified that this train consisted of 13 cars when it was made up, and made its first stop at the railroad crossing near Winfield, and then was stopped the second time at the water tank, at which point he broke the seal upon the merchandise car, which was then the first car of the train back of the engine and tender, and opened the sliding door of the car while standing on the ground and pushed back the door about two-thirds of the way and jumped from the ground or threw himself into the car; that he was carrying a lantern, it being then dark at about four o'clock in the morning. and when he entered this car he was within the plain sight of the engineer, who was oiling the locomotive; the door was located in the center of the car and on the right side of the car looking toward the engine; that his object in entering said car was to look for and sort the merchandise in the car so as to unload it promptly at the depot at Winfield, and while plaintiff was so occupied inside the car, with the remaining twelve cars still attached behind the merchandise car in which he was working, the train was moved from the water tank up to what was known as the "stone track," and when the train was started to move from the water tank to the stone track the car door remained open and plaintiff had no difficulty in maintaining his balance in his work inside the car while the train was in motion; that he carried the boxes which were to be unloaded at the depot and piled them near the open door for prompt unloading when the car should be moved up to the depot platform; that the train was stopped at the stone track with the door of this car still open, and the brakeman uncoupled this car from the remaining twelve cars and pulled the pin, so that the engine, tender, and merchandise car could then be moved up to the unloading track at the depot; that he had carried several boxes and arranged or piled them near the open car door prior to the time the car was stopped and disconnected at the stone track, and after it had been uncoupled as aforesaid from the remaining cars, and while plaintiff was bending over near the open door of the car setting a box of such merchandise on the floor near the open door, he saw the brakeman give the signal with his lantern and yell, "Go ahead," to the engineer; plain-tiff was then standing about two feet from the car door.

Plaintiff further testified that after he saw and heard the "Go ahead" signal given by the brakeman, the engineer started the engine with such a violent jerk or start that it threw plaintiff off his balance right in line with the car door and he was thrown toward the open doorway and the car door closed upon his head and he was knocked unconscious thereby, and that was the last he knew until he recovered consciousness in the hospital at Winfield; that when he opened this car door at the water tank he did not notice any unusual ease with which the door was opened by him while he was standing on the ground and pushed back the door, as he had not theretofore worked with that car door or handled that kind of a car door before that date, and had no notice or warning from the defendant as to the ease with which that kind of a door would slide back and forth; that the engine then attached to the tender and merchandise car was one of the largest engines on that division of the defendant railroad system at that time, and that the engineer started it with an extreme jerk of violence; that as a result of having his head crushed by said closing door he suffered painful and serious injuries and remained in the hospital of the defendant and under treatment of doctors and surgeons for many weeks thereafter; that at that time he was earning about $200 per month on a mileage basis as a conductor of the defendant and was in good health prior to said injury, and that it was next to impossible to throw him off his feet as a result of ordinary bumps and jerks of trains, as he had been employed in the railway train service for 23 years prior thereto.

The record further shows that the door which crushed plaintiff's head slid upon rollers located along the bottom thereof and such door was of a weight of approximately 350 pounds; that while the door was constructed to slide easily upon its rollers it required substantial force to move it, and that when the full train was started from the water tank to move up to the stone track the train was not started with sufficient jerk or violence to close the door, which had been theretofore opened by the plaintiff when he entered said car. There were no eyewitnesses to the receipt of the injuries by plaintiff as testified by him, as the engineer and fireman were engaged in their duties on the engine, and the two

brakemen, being the remaining members of the train crew, were outside the car and not so placed that they could see plaintiff as he was thrown into the open doorway of the car at the time the accident occurred.

The testimony of plaintiff that the engine with the merchandise car attached was started in a rough, violent, and sudden start was disputed by the two brakemen of the train crew, who testified that it was a usual start, the fireman testifying he did not notice any rough or unusual start, and the engineer, when being asked:

"Q. Did you start it with any jerk or jar? A. I don't think so; no, sir."

—and further stated that he only opened the throttle of the engine sufficient to start one car and the engine.

There was also evidence that soon after the plaintiff was injured an examination of the door jamb on the south side of the car showed blood upon the door jamb and also on the floor of the car.

Plaintiff further testified that he knew, as a result of having seen these signals from the brakeman to the engineer, that the car was "Going to start right then," and that the engineer in charge of the engine had worked with him several months theretofore and that the engineer "had the reputation of being a rough man" among those who came in contact with him, and further testified as follows:

"Q. Who gave him that reputation? A. I guess everyone that came in contact with him. Q. Did you know that fact before you went to work with him? A. I had to. Q. You worked with him in spite of the fact that he was a rough handler of trains? A. He didn't handle them rough every time."

Defendant presents and argues four assignments of error. as follows:

(1) The verdict of the jury is not supported by sufficient evidence, and the court should have directed a verdict in favor of said defendant. The plaintiff in the above case assumed the risk.

(2) The court erred in giving certain instructions to the jury.

(3) The court erred in permitting counsel for plaintiff, in his opening statement to the jury, to make highly prejudicial, incompetent, irrelevant and immaterial statements.

(4) The damages in this case are excessive, and appear to have been awarded under the influence of passion and prejudice on the part of the jury.

These assignments of error will be considered in the order above set forth.

1. From a careful consideration and review of the evidence set forth in this record, we think there was offered competent evidence to justify the trial court in submitting to the jury the question of whether the injury received by plaintiff resulted in whole or in part from the negligent starting by the engineer of the engine attached to the car in which plaintiff was working at the time he received the injuries and for the determination of the jury as to whether such act of the engineer had causal connection with and was the proximate cause of the injuries so received; that the jury was entitled to consider not only the testimony of plaintiff but the circumstantial evidence that this heavy car door did not close when the engineer started the train at the water tank after plaintiff had entered the car, at which time the train was started in the usual and ordinary manner and without undue violence, but that after the twelve cars had been disconnected from the car in which plaintiff was working, there being evidence from which the jury might have found the engineer knew plaintiff was so working in said car at that time, that it was then started in such a manner and with such force and violence that plaintiff was not only thrown off his balance toward the open doorway, but that the door closed upon and crushed the head of plaintiff, and there being evidence that blood was found upon the door jamb and floor of the door, from all of which evidence the jury must have found that the closing of said door was set in motion by the violent starting of said engine which was the cause of the crushing of the head of plaintiff between said door jamb and said moving door. The fact that plaintiff was the only witness that testified to said violent and unusual starting of said engine, considered with the circumstantial evidence of the closing of said heavy door, was sufficient to authorize the trial court to submit these disputed facts for the determination of the jury, and to support the verdict rendered upon such evidence. notwithstanding the testimony of the other members of the train crew that it was not an unusual and violent starting of said engine by said engineer, as the jury was authorized to determine the credibility of the witnesses and the weight to be given their testimony, and, there being competent evidence to support said verdict, we find no reversible error in the action of the trial court in approving said verdict and enter-

ing judgment thereon, so far as this part of the assignment of error is concerned.

As was stated by this court in Chicago, R. I. & P. Ry. Co. v. King, 165 Okla. 169, 25 P. (2d) 304:

"From a review of this record, it would be difficult to conceive how the trial court could have found that the evidence was so conclusive that it would have been compelled in the exercise of its sound judicial discretion to have directed the verdict or to have set aside the verdict in this case. If it was not of such a conclusive nature, it was the court's duty to present the issues to the jury. See Conrad v. Wheelock (D. C.) 24 F. (2d) 996. It is our opinion that no prejudicial error resulted in submitting the issues to the jury. * * * The case was based upon a causal connection between the alleged negligence of the defendant and the resulting injury to decedent complained of by plaintiff, and the verdict of the jury was not based upon mere conjecture and speculation."

In St. Louis-S. F. Ry. Co. v. Cauthen, 112 Okla. 256, 241 P. 188, certiorari denied, 270 U. S. 656, 70 L. Ed. 784, this court held that when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury, and it is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered one of law for the court.

With reference to instructing a verdict in favor of defendant, it was held in Chicago, R. I. & P. Ry. Co. v. Devine, 239 U. S. 52, 60 L. Ed. 140, that a contention that the trial court should have instructed a verdict in favor of the defendant on the ground that there was no evidence tending to show either negligence or that the company or that the deceased at the time of the particular transaction from which the injury arose was engaged in interstate commerce, is too lacking in substance to prevent the granting of a motion to affirm, where what is really involved is a mere dispute concerning the weight of conflicting tendencies of proof.

In Pederson v. Delaware, L. & W. R. Co., 229 U. S. 146, 57 L. Ed. 1125, it was held that the Federal Employers' Liability Act governs instances where the causal negligence is that of a fellow servant engaged in interstate commerce for injury to an employee while engaged in interstate commerce, and with reference to the request for a directed verdict in favor of defendant said:

"What has been said shows that there was evidence to sustain a finding that at the time of the plaintiff's injury the defendant was engaged, and he was employed by it, in interstate commerce; and, as in other respects, the case was one for the jury, the court rightly denied the defendant's request that a verdict in its favor be directed."

We therefore conclude that the trial court committed no error in refusing to direct a verdict for defendant upon the contention that there was no sufficient evidence in favor of plaintiff's contentions to support the verdict of the jury.

It is further contended that the plaintiff assumed the risk as to the injuries received in this case.

It is settled by prior decisions of this court and those of the Supreme Court of the United States that when an employee brings suit under this act the law of assumption of risk is that of the common law as construed by the Supreme Court of the United States to have existed prior to the passage of said act, except where the common carrier has violated provisions of a statute enacted for the safety of its employees in accordance with section 54, hereinabove quoted, and that where the evidence is undisputed and the injury not caused by a violation of such safety statutes, the question of assumption of risk is one of law. St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 P. 1083; Gulf, C. & S. F. Ry. Co. v. Scroggins, 161 Okla. 294, 18 P. (2d) 873; Chesapeake & O. R. Co. v. Kuhn, 284 U. S. 44, 76 L. Ed. 157; Erie R. Co. v. Irons (C. C. A., 3d Cir.), 48 Fed. (2d) 60. certiorari denied, 283 U. S. 857, 75 L. Ed. 1463.

And, further, that such employee assumes the usual and ordinary risks and hazards of his occupation and also those defects and risks which are known to him, or are plainly observable, although due to the negligence of the master or a fellow servant. Chicago, R. I. & P. Ry. Co. v. King, 165 Okla. 169, 25 P. (2d) 304; Chicago, R. I. & P. Ry. Co. v. Jackson, 61 Okla. 146 160 P. 736; Pryor v. Williams, 254 U. S. 43, 65 L. Ed. 120.

But such employee does not assume extraordinary and unusual risks of his occupation which are not known to him and are not plainly observable or could not have been foreseen and expected. Lusk v. Bandy, 76 Okla. 108, 184 P. 144; Chicago, R. I. & P. R. Co. v. Ward, 252 U. S. 18, 64 L. Ed. 430; Deputla v. Pennsylvania R. Co., 110 N.

J. L. 515, 166 Atl. 87, certiorari denied, 290 U. S. 643, 78 L. Ed. 559.

In Reed v. Director General, 258 U. S. 92, 66 L. Ed. 480, the facts were stated to be:

"But, either through the negligence of decedent himself, or of the engineer in failing to notice or heed the signaling of decedent, the locomotive did not stop in time, the caboose was derailed, and decedent was crushed to death between it and cars on an adjoining track."

And the Supreme Court of Pennsylvania, 267 Pa. 86, 110 Atl. 254, accepting the view that the engineer's negligence was the proximate cause of the fatal injury, held the decedent had assumed the risk of such negligence and the master was not liable, which ruling was reversed, and Mr. Justice McReynolds, speaking for the Supreme Court of the United States, said:

"In actions under the federal act, the doctrine of assumption of risk certainly has no application when the negligence of a fellow servant, which the injured party could not have foreseen or expected, is the sole, direct, and immediate cause of the injury. To hold otherwise would conflict with the declaration of Congress that every common carrier by railroad, while engaging in interstate commerce, shall be liable to the personal representative of any employee killed while employed therein, when death results from the negligence of any of the officers, agents, or employees of such carriers."

Also, see Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 165, 72 L. Ed. 513.

If the evidence is harmonious and consistent and the circumstances permit of but one conclusion, assumption of risk is a question of law for the court. St. Louis & S. F. Ry. Co. v. Snowden, 48 Okla. 115, 149 P. 1083; Chicago, R. I. & P. Ry. Co. v. Jackson, 61 Okla. 146, 160 P. 736; Gulf, C. & S. F. Ry. Co. v. Scroggins, 161 Okla. 294, 18 P. (2d) 873.

However, the question of fact as to whether the hazards and risks were known to plaintiff or must necessarily have been known from all the facts and circumstances shown in the case, is usually a question for the jury. Chicago, R. I. & P. Ry. Co. v. King, 165 Okla. 169, 25 P. (2d) 304; St. Louis-S. F. Ry. Co. v. Cauthen, 112 Okla. 256, 241 P. 188, certiorari denied, 270 U. S. 656, 70 L. Ed. 784; Lusk v. Bandy, 76 Okla. 108, 184 P. 144; North Carolina R. Co. v. Zachary, 232 U. S. 248, 58 L. Ed. 591; McGovern v. Philadelphia & R. Co.,

235 U. S. 389, 59 L. Ed. 283; Chicago, R. I. & P. Ry. Co. v. Ward, 252 U. S. 18, 64 L. Ed. 430.

It was held in Williams v. Charleston & W. C. Ry. Co., 121 S. C. 23, 113 S. E. 300, certiorari denied, 259 U. S. 589, 66 L. Ed. 1078, that the basis for denying recovery under the defense of assumption of risk is knowledge or notice of the danger on the part of the person injured.

In Moran v. Atchison, T. & S. F. Ry. Co., 330 Mo. 278, 48 S. W. (2d) 881, certiorari denied, 287 U. S. 622, 77 L. Ed. 539, it was said:

"Under the federal rule, Moran assumed the risks and dangers ordinarily incident to his employment, and also the risks caused by his employer's negligence which were fully known to and appreciated by him, or so plainly observable that they would be presumed to be known to him.

"We cannot say as a matter of law that Moran knew and appreciated that the engineer might negligently fail to stop the train or slacken its speed after seeing the motor car on the track which threatened his own life and the lives of other members of the crew and passengers, and, after seeing that Moran was attempting to remove the obstruction from the track. Neither can we say as a matter of law that the near and dangerous approach of the train was so open and obvious that Moran knew and appreciated or should have known and appreciated the danger of being struck by the train if he did not leave his post of duty and abandon the motor car on the track, especially so in view of the fact that he was acting in an emergency without time for deliberation, and in view of the further fact that the train approached him without giving any alarm signals and making but little noise. * * * Under the circumstances shown we cannot judicially say that Moran did not act as an ordinarily prudent person would have acted under the same circumstances, and therefore decline to hold, as a matter of law, that he assumed the risk."

In Rocco v. LeHigh Valley R. Co., 288 U. S. 275, 77 L. Ed. 743, there was involved a question of whether a track inspector had assumed the risk of being injured by the failure on the part of a motorman operating a train to keep a lookout and give warning when approaching a curve toward which the inspector was approaching on a motor tricycle from the opposite direction, although the inspector had failed to ascertain before starting on his trip, as required by a rule of the employer, the whereabouts of such motor train; and that the issues of negligence on the part of the motorman

in approaching such curve without keeping lookout or giving warning of such approach where the view of the track ahead was obstructed from the view of the inspector, and of contributory negligence on the part of such inspector, were questions for the jury where storm conditions made the presence on such track of an inspector likely; that such contributory negligence could not be said as a matter of law to be the sole and primary cause of his death resulting from such collision, and whether such track inspector was guilty of contributory negligence was to be determined in the light of all facts he knew, or ought to have known in the exercise of reasonable care, and in the opinion Mr. Justice Roberts, speaking for the court, said:

"Respondent relies on the duty of a person employed on the tracks of a railroad to exercise vigilance for his own safety, and to keep out of the way of moving trains, and asserts that the chance of a collision was a risk assumed by an employee assigned to work on the roadbed. * * * Under the authorities cited the decedent assumed the risks ordinarily incident to his employment as a track inspector, but in the circumstances shown we do not think they included a failure on the part of the motorman to keep a lookout and to give warning in places where the view of one who might be expected to be on the track or approaching in the opposite direction was shut off and the probability of accident was therefore much greater than where the track is straight and the view unobstructed. The issues of negligence of the motorman and contributory negligence of the decedent were for the jury. * * *"

It is the rule of this court that both assumption of risk and contributory negligence are affirmative defenses, and the burden of proving them is imposed upon the defendant pleading such defenses. Chicago, R. I. & P. Ry. Co. v. King, supra. In the opinion, Mr. Justice McNeill, speaking for the court, said:

"In many cases it is difficult to clearly distinguish whether the circumstances and facts in a given case come within the defense of assumption of risk or contributory negligence when such affirmative defenses are pleaded. Sometimes the defense of assumption of risk seems to pass, merge, or shade into the question of contributory negligence. However, there is a basic and very positive and distinct difference between these defenses. The assumption of risk is based upon knowledge and decision which includes an intelligent choice and is contractual in its nature. The defense of contributory negligence has its foundation in tort. Both being affirmative defenses, the burden of their proof is imposed upon the defendant. * * *

"Counsel for plaintiff state in their brief that the trial court burdened the plaintiff with the assumption of risk, hazards, and dangers as were ordinarily incident to the employment of decedent as well as the hazards, risks, and dangers as were known to him or must necessarily have been known and urge that the assumption of risk was not substantiated from the facts and circumstances in the case. We think there is justification in this contention. However, the jury resolved this question of assumption of risk in favor of the plaintiff. And even though the facts and circumstances in this case involve the question of assumption of risk, the question of fact, as to whether the decedent knew and appreciated the danger of descending over the rough piece of steel on this particular tender at the place he selected to descend to the cab of the engine. was clearly for the determination of the jury. The determination of those facts when applied to the decedent working on this oil tank in the nighttime was not a question of law for the court. * * *"

See, also, Miller v. Southern Pacific (Utah) 21 P. (2d) 865, certiorari denied, 290 U. S. 697, 78 L. Ed. 600; Pipal v. Grand Trunk W. R. Co., 341 Ill. 320, 173 N. E. 372, certiorari denied, 283 U. S. 838, 75 L. Ed. 1449.

The defendant in this case pleaded as one of its defenses in its answer that plaintiff assumed the risk of injury when he entered the employ of the defendant, but offered no evidence upon such issue other than the testimony of the plaintiff that he was an experienced conductor of approximately 23 years' experience in train service and operating trains and familiar with the method of operating trains and engines attached thereto, and the further testimony of the plaintiff that the engineer operating the engine "had the reputation of being a rough man" among those that came in contact with him, and that plaintiff knew that fact and worked with said engineer notwithstanding the engineer was known by him to be a rough handler of trains, although said engineer did not handle them roughly "every time".

It is, therefore, contended by defendant that this evidence is sufficient as a matter of law to show that plaintiff "should have foreseen and expected" that the engineer would negligently start said engine, as the jury must have found that he did by its verdict in this cause, and, therefore, a risk assumed by him as to the negligence of said engineer which was "known to him or plainly observable," and therefore the trial

court erred in refusing to direct a verdict for defendant.

In McGovern v. Philadelphia & R. R. Co., 235 U. S. 389, 59 L. Ed. 283, supra, it was held that conflicting testimony on the question of the assumption of risk justifies the court in refusing to charge the jury that the risk was assumed, and in the opinion the court said:

"We have given the testimony in general outline but enough to show that conflict there was in it was for the jury to judge of, **and what deductions there were to be made from it were for the jury to make.** And the district court, being of this view, refused to charge the jury, as we have seen, that McGovern had assumed the risk of the situation. We cannot say that, as a matter of law, the court was mistaken. We see no error, therefore, in its ruling.'

In Chicago, R. I. & P. Ry. Co. v. Ward, 68 Okla. 201, 173 P. 212, there was involved a claim for injuries sustained by plaintiff in falling from a box car, caused by the failure of a fellow servant to uncouple the cars that were being switched and the sudden and unusual stopping of the string of cars on which he was working by the engineer in charge of the engine, and this court held that under the federal act an employee assumes all the ordinary risks of his employment which are known to him or those which could have been known by the exercise of ordinary care to a person of reasonable prudence and diligence in like circumstances, but risks not naturally incident but which arise from the negligence of the master are not so assumed until he becomes aware of such negligence and of the risk arising therefrom, unless they are so apparent and obvious that an ordinarily careful person would observe the one and appreciate the other, but whether it is an ordinary risk or an extraordinary risk known by the servant or with knowledge of which he is chargeable, is a question of fact to be submitted to the jury. In the opinion this court said:

"The negligence complained of was the failure to uncouple the cars and the sudden stopping with such force as to throw plaintiff from the top of the box car. If this was an unusual method of switching and amounted to negligence, in the nature of things, plaintiff could not have been aware of the negligence previous to the injury so as to have assumed the risk incident thereto. It was a question of fact, as has been said, to be determined by the jury whether this method of switching was usual or amounted to negligence."

Upon review in Chicago, R. I. & P. R. Co. v. Ward, 252 U. S. 18, 64 L. Ed. 430, that court affirmed the decision and held that so far as extraordinary hazards are concerned the employee may assume that the employer and his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and dangers arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them; that said act places a coemployee or fellow servant's negligence, when it is the ground of action, in the same relation as that of the employer upon the matter of assumption of risk; that a switchman riding on a cut of freight cars which he was to check by applying a brake when these cars should be cut off from the engine does not assume the risk of sudden precipitation from the front end of a car by the abrupt checking from the failure of the engine foreman to make the disconnection at the proper time. In the opinion the court said:

"Applying the principles settled by these decisions to the facts of this case, the testimony shows that Ward had neither warning nor opportunity to judge of the danger to which he was exposed by the failure of the engine foreman to cut off the cars. In the absence of notice to the contrary, and the record shows none, Ward had the right to act upon the belief that the usual method would be followed and the cars cut off at the proper time by the engine foreman, so that he might safely proceed to perform his duty as a switchman by setting the brake to check the cars which should have been detached. For the lack of proper care on the part of the representative of the railway company while Ward was in the performance of his duty, he was suddenly precipitated from the front end of the car by the abrupt checking resulting from the failure to make the disconnection. This situation did not make the doctrine of assumed risk a defense to an action for damages because of the negligent manner of operation which resulted in Ward's injury. * * * It was a sudden emergency, brought about by the negligent operation of that particular cut of cars, and not a condition of danger, resulting from the master's or his representatives' negligence, so obvious that an ordinarily prudent person in the situation in which Ward was placed, had opportunity to know and appreciate it, and thereby assume the risk."

In Gila Valley G. & N. R. Co. v. Hall, 232 U. S. 94, 58 L. Ed. 521, it was held that an employee cannot be said as a matter of law to have assumed the risk of accident from a defective flange on the "pony

wheel" of a railway gasoline car, who was riding thereon, where there is no direct evidence that he knew of the defect and it was not a part of his duty to inspect the machine or the wheel or to look after their condition, and whether the defect was such as to render the use of the car dangerous was in dispute at the trial, as an employee is not chargeable with the assumption of a risk arising out of a defect in an appliance attributable to his employer's negligence unless he not only knows (or is presumed from its obviousness to have known) of the defect, but also knew (or else the danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it) that it endangered his safety. That the federal Supreme Court will not revise the refusal of a territorial Supreme Court to control the discretion of the trial court in remitting, in accordance with the local practice. $5,000 of a $10,000 verdict instead of granting a new trial on the ground that the verdict was tainted with prejudice and passion.

While it is true that while plaintiff continued in the employ of the defendant there was implied an agreement that he assumed the risk of being injured in the usual and ordinary method of operating trains which he was employed to handle, the principles enunciated in the cases hereinabove cited show that he did not assume the risk of injury that would be caused by unusual and extraordinary dangers arising in such service, including the negligence of his fellow servants, unless he knew that his fellow servants, including the engineer in charge of the train with whom he was working was customarily so negligent in operating the engine that his safety would be endangered and should have foreseen and expected that such engineer would negligently start said engine; but we cannot say as a matter of law from the record in this case that he had such knowledge and notice and should have foreseen and expected such negligent operation by said engineer, and, therefore, these questions were properly submitted to the jury for its determination thereof.

In Missouri P. R. Co. v. Montgomery, 186 Ark. 537, 55 S. W. (2d) 68, certiorari denied, 289 U. S. 747, 77 L. Ed. 1493, it was held that evidence in an action for injuries to a brakeman in the caboose of a freight train because of alleged violent jar caused by negligent application of brakes by the engineer of the train was sufficient to take to the jury the question of the engineer's negligence in applying the brakes, that the credibility of the witnesses and the weight of the evidence are questions for the jury; that, while an employee assumes the risks ordinarily incident to his employment, he does not assume the risk of a fellow servant's negligence, unless he knows thereof, and that the plaintiff did not assume the risk of being thrown against the desk in the caboose by the violent jar caused by the engineer's negligence in applying the brakes, as whether the method used by the engineer to stop or slow down the freight train was negligence was for the jury on conflicting testimony, and in the opinion said:

"Appellee and other witnesses had made statements which were introduced in evidence. We will not set forth this evidence. The credibility of witnesses and the weight of the evidence are questions for the jury. There was substantial evidence of negligence. * * *

"When one enters the employ of another, he assumes all the risks and hazards ordinarily incident to the employment, and the master is not liable for injury resulting to the servant if the injury to the servant was caused by one of the ordinary or usual risks or hazards of the employment; but the servant does not assume the risk of the negligence of the master for whom he works or any of its servants unless he knew of the existence of the negligence. * * *

"It would of course have been impossible for the appellee to have known of the existence of the negligence of the engineer because he was in the caboose sitting and could not have seen any evidence of the negligence before his injury. The brakeman riding in the cupola saw the effect of the brakes and knew the danger and prepared himself, but the appellee and conductor who were in the caboose could not know this. * * *

"The engineer testified, as we have said, that he did not use the brakes at all. Other witnesses testified that he did, and the circumstances show that the brakes were used."

We therefore conclude that the trial court did not err in refusing to direct a verdict for defendant upon the contention that the evidence submitted was sufficient as a matter of law, to show that plaintiff "should have foreseen and expected" that the engineer would start said engine in a violent and extraordinary manner, or that such negligence was known to plaintiff or plainly observable, but properly left for the determination of the jury whether or not the engineer was guilty of negligence, causing plaintiff's injuries; and also to determine what deductions should be made from the admissions in the testimony and written statement of plaintiff and from all the facts and circumstances submitted to it by the evidence

in the case and the instructions of the court; and for its determination as to whether or not plaintiff had assumed the risk of being injured as the testimony showed plaintiff was injured from the evidence set forth in the record and the instructions given the jury applicable thereto.

2. It is contended that the court erred in instruction No. 13 submitted to the jury, which was excepted to by defendant and reads as follows:

"13. You are instructed that it was the duty of the defendant to furnish the plaintiff with a reasonably safe place in which to work and reasonably safe cars and equipment with which to work and to exercise ordinary care for such purpose. It was, likewise, the duty of the employees of the defendant to exercise ordinary care in the operation of its engine and train to avoid injuring the plaintiff and you are instructed that, if you find from a preponderance of the evidence in this case that the defendant failed to exercise ordinary care in furnishing the plaintiff with a reasonably safe place in which to work and reasonably safe equipment with which to work in the particulars alleged in this case or that the defendant, its servants, agents and employees, in operating its engine and train, failed to exercise ordinary care in the operation thereof and as the direct and proximate result of the failure of the defendant, its servants, agents and employees to exercise ordinary care in either or both of the particulars above set forth and as the result of which the car door, in which plaintiff was at work, was caused to suddenly slide upon its bearings rapidly and with great force, and as the result thereof, caught the head of plaintiff between the edge of said car door and the door jamb of such door, thereby injuring the plaintiff as claimed by him, that such failure on the part of the defendant, its servants, agents and employees to exercise ordinary care for the safety of the plaintiff would constitute actionable negligence, which would entitle the plaintiff to recover for such injuries, unless you further find that the plaintiff assumed the risk of the occurrence which caused such injuries, as elsewhere explained in these instructions and further and in the event that you find that the defendant or its officers, agents and employees were only guilty of negligence which, in part, caused the occurrence in question and the plaintiff was, also, guilty of contributory negligence which, concurring with the negligence of the defendant, its servants, agents and employees resulted in the injuries to the plaintiff, then and in such latter event, the amount you award to the plaintiff for his injuries should be diminished by you in proportion to the negligence attributable to him, as elsewhere explained in these instructions."

It will be noted that the instruction included a reasonably safe place in which to work and equipment and appliances and exercise of ordinary care in handling the engine and train, and that if the jury found from a preponderance of the evidence that defendant failed as to a reasonably safe place to work and equipment, or that defendant failed to exercise ordinary care in the operation of its engine and train and as the proximate result of failure so to do in either or both of said particulars, as a result of which the car door was caused to suddenly slide upon its bearings with great force so as to injure plaintiff as claimed by him, that such failure of defendant and its employees to exercise ordinary care for the safety of plaintiff would constitute actionable negligence and entitle plaintiff to recover therefor unless the jury found that plaintiff assumed the risk as elsewhere explained in the instructions; and further that if the jury found that such negligence only in part caused the injury and plaintiff was also guilty of contributory negligence which concurred with the negligence of defendant or its employees resulting in the injuries to plaintiff, then and in such latter event "the amount you award to the plaintiff for his injuries should be diminished by you in proportion to the negligence attributable to him, as elsewhere explained in these instructions."

It is further contended that such instruction submitted to the jury two alleged acts of negligence: (1) The allegation to the effect that the company was negligent in having in its train a box car with doors which operated easily; and (2) the allegation of negligence to the effect that the train was operated in an improper manner.

With reference to contention (1), we cannot agree, as instruction No. 17 given by the court to the jury, to which no exception was taken by either party, reads:

"17. You are instructed that it was not negligence on the part of the railway company to have in its train a box car with doors which opened and closed with great ease, and sometimes opened and closed with the movement of the train."

This instruction removed from the consideration of the jury any alleged negligence from the use of a car with doors that operated easily; also, such instruction No. 13, when properly considered and taken in conjunction with instruction No. 17 aforesaid, could not have misled the jury to the effect that the court was submitting to them as actionable negligence the operation in said

train of a box car with doors which opened easily; although such instruction would leave for the consideration of the jury the question of a reasonably safe place to work and reasonably safe equipment with which to work, it is not apparent that the jury could have been misled by this instruction.

It is further insisted that in said instruction the jury were instructed that if they found plaintiff guilty of contributory negligence the amount awarded to plaintiff for his injuries "should be diminished," whereas section 53, hereinbefore quoted in this opinion, provides. "The damages shall be diminished," and therefore it was reversible error to use the word "should" instead of "shall," although in instruction No. 9 the court in further instructing the jury concerning the defense of contributory negligence instructed them:

"But if you find that he was guilty of such contributory or concurring negligence, that then and in that event you will diminish the amount, if any, that you award to the plaintiff in proportion to the amount of negligence attributable to the plaintiff."

We are unable to say that the use of the word "should" instead of the word "shall" could have misled the jury, particularly in view of the language of instruction No. 9, wherein the word "will" was used as above quoted.

Section 53 supra, provides that contributory negligence "shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee," and, therefore, such diminution of damages is solely a question for the consideration of the jury if there is evidence justifying such finding of contributory negligence by the plaintiff.

In St. Louis-S. F. Ry. Co. v. Brown, 241 U. S. 223, 60 L. Ed. 966, wherein the word "should" was used by the trial court in instructing the jury, the court said:

"It is contended that the court erred in charging the jury that, in the event they found the plaintiff guilty of contributory negligence, they should 'reduce his damages in proportion to the amount of negligence which is attributable to him,' since the court did not define the word 'proportion,' and hence failed to fix any standard by which the damages should be measured. * * * The instruction given is almost in the identical language of the statute, and while definition might have further conduced to an appreciation by the jury of the standard established by the statute, we think there was no error in the charge given, especially as

the railroad company made no request for a charge clarifying any obscurity on the subject which it deemed existed. It is true the company made a request on the subject which the court declined to give, but that request, we are of opinion, taken as a whole, instead of clarifying any ambiguity deemed to exist in the instruction which the court gave would have served to obscure it. There was no error, therefore, leaving aside the question whether the requested instruction did not contain matters which, if given, would have been erroneous."

In Norfolk & W. R. Co. v. Earnest, 229 U. S. 114, 57 L. Ed. 1096, it is said:

"Not improbably the mistake in the instruction was purely verbal, and would have been promptly corrected had attention been specially called to it, and possibly it was not prejudicial to the defendant. But, be that as it may, the record discloses that full opportunity for presenting objections was afforded, and that the one now pointed out was not made. We must therefore apply the rule that where an instruction embodies several propositions of law, to some of which no objection properly could be taken, a general exception to the entire instruction will not entitle the exceptor to take advantage of a mistake or error in some single or minor proposition therein."

In New York C. R. Co. v. Marcone, 281 U. S. 345 74 L. Ed. 892, it is said:

"The jury, having found, as it might, that the negligence was the cause of the death, might also have inferred that the deceased was guilty of contributory negligence, but the trial judge correctly charged that under the Federal Employers' Liability Act contributory negligence is not a bar to recovery unless it is the sole cause of the injury or death, and may be taken into consideration by the jury in fixing the amount of damage."

It is the rule in this court that all of the instructions given by the court should be considered together and in their entirety, and when so considered, if they state the law clearly and without conflict, it is sufficient, although one or more, standing alone, might be incomplete. St. Louis-S. F. Ry. Co. v. Cauthen, 112 Okla. 256, 241 P. 188, certiorari denied, 270 U. S. 656, 70 L. Ed. 784; Schaff v. Daugherty, 112 Okla. 124, 239 P. 922, certiorari denied, 270 U. S. 642, 70 L. Ed. 776; Bucktrot v. Partridge, 130 Okla. 122, 265 P. 768.

Also, under section 3206, O. S. 1931, this court cannot set aside a judgment of the trial court or order a new trial unless, after an examination of the entire record, it appears that the error complained of has probably resulted in the miscarriage of justice.

We therefore conclude that while the in-

structions given to the jury with reference to the issues involved for its consideration were unduly prolix, no reversible error appears from the giving of the instructions complained of.

3. It is further contended that the rights of defendant were prejudiced by the court in permitting alleged improper statements to be made to the jury in the opening statement of counsel for plaintiff.

We have carefully considered this contention and the argument set forth in the brief of counsel for defendant, but instruction No. 23 given the jury by the court reads as follows:

"23. You are further instructed that it is your duty under your oaths, to decide this case upon the evidence permitted to go to you from the witness stand and these instructions; and you must not let sympathy or prejudice for or against either the plaintiff or the defendant affect your verdict."

We therefore conclude that the substantial rights of the defendant were not prejudicially affected by remarks of counsel for plaintiff in the opening statement. Chicago, R. I. & P. Ry. Co. v. Brooks, 155 Okla. 53, 11 P. (2d) 142; St. Louis-S. F. Ry. Co. v. Cauthen, supra.

4. It is next contended that the damages awarded plaintiff by the defendant are excessive, and awarded under the influence of passion and prejudice.

The amount of damages recoverable is always a question of fact for the jury, and will not be disturbed on appeal unless it appears from the record that the jury was swayed by passion or prejudice against the losing party, and so large as to shock the sense of justice, and depends upon the facts of each particular case. Schaff v. Daugherty, 112 Okla. 124, 239 P. 922, certiorari denied, 270 U. S. 642, 70 L. Ed. 776; Chicago, R. I. & P. Ry. Co. v. King, supra; Bucktrot v. Partridge, supra.

Also, under section 53, supra, even though an employee may have been guilty of contributory negligence, it does not bar recovery, but the damages shall be diminished in proportion to the amount of negligence attributable to the employee, and such diminution of damage, if it finds contributory negligence of a plaintiff, is solely for the determination of the jury; it is not apparent from a review of the record in this case and the amount of the unanimous verdict of the jury, that it failed to give proper consideration to such diminution, or determined the amount of its verdict under the influence of passion and prejudice in favor of the plaintiff and against the defendant.

In Miller v. Southern Pacific (Utah) 21 P. (2d) 865, certiorari denied, 290 U. S. 697, 78 L. Ed. 600, it is said:

"This provision forces the jury to weigh the blame attributable to the respective parties where both are at fault but neither solely responsible for the injury. Because the statute has imposed upon the jury the duty of determining proportions does not justify a modification of meaning of well-recognized legal terms. Under the statute (section 53, 45 USCA), 'The damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee'; therefore, the responsibility rests upon the jury to weigh the blame. That question may not be opened or touched by the court, neither by instructions before verdict without invading the province of the jury, nor after verdict without violating the secrecy and sanctity of the jury's deliberations. In every verdict involving contributory negligence under the federal act, the proportion the verdict is diminished based upon the amount of negligence attributable to the employee is locked within the secret deliberations of the jury room. * * *

"This case is brought under the provisions of the Federal Employers' Liability Act (45 USCA secs. 51-59), and the meaning and application of the act as interpreted by the Supreme Court of the United States is final and controlling as to that matter. It is the duty of this court to ascertain the construction which that court has given the act and rule accordingly."

We have given careful consideration to the record in this case and the briefs of both parties submitted herein, but failing to find reversible error, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Edward H. Chandler and Stanley D. Campbell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Chandler and approved by Mr. Campbell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur.