## MISSOURI-KANSAS-TEXAS R. CO. v. HERRON, Adm'x.

No. 25509. March 3, 1936.

M. D. Green and Eric Haase, for plaintiff in error.

Morrison, Morrison & Morrison, for defendant in error.

BUSBY, J. On March 5, 1932, W. H. Herron, a 62-year old switchman with an annual earning capacity of approximately $2,500, received a fatal injury while employed by and engaged in his duties as switchman for the Missouri-Kansas-Texas Railroad Company. He was at the time working in the yards of that company in Oklahoma City.

On the 7th day of September, 1932, this action was commenced in the district court of Oklahoma county by Ada F. Herron, as administratrix of the estate of W. H. Herron, as plaintiff, for the benefit of herself and minor son, William Howard Herron, aged twelve, against the defendant railway company to recover for the alleged wrongful death of W. H. Herron, which was asserted to have been caused by negligence on the part of the railway company.

The action was based upon the Federal Employers' Liability Act (45 USCA, sections 51 to 59). The defendant in its answer, in addition to a general denial, asserted contributory negligence and assumption of risk as defenses. It was conceded at the trial and is admitted in this court that at

the time of the fatal injury the deceased was engaged in the performance of duties connected with interstate commerce.

The cause was tried to a jury and resulted in a verdict for the sum of $20,000, to be divided $8,000 for Ada F. Herron and $12,-000 for the minor, William H. Herron. As a condition to overruling a motion for new trial, the trial court required a remittitur in the sum of $5,000, which requirement was met by the plaintiff, and judgment was thereupon reduced to the sum of $15,000. The defendant brings the case to this court for review, appearing herein as plaintiff in error. For the sake of convenience, we shall continue to refer to the parties in the order of their appearance before the trial court.

On the fatal occasion W. H. Herron, while acting as foreman of a switching crew, was riding on the running board near the front end of an empty tank car being pushed by a switch engine in a westerly direction along one of the tracks in the yard of the defendant company. The car was traveling at the rate of about eight miles per hour. Suddenly the lead trucks on the tank car became derailed, running along on the rails for about eleven feet, then dropping off on the ties and continuing to travel for a distance of approximately 90 feet. The total distance traveled from the point of derailment was approximately 100 feet. After the front trucks of the tank car had bumped along the ties for about 25 or 30 feet, the deceased, who was riding immediately over the derailed trucks, was either jolted so that he fell off the car or he jumped off. At any rate he lit on his feet out of balance and fell backward toward the car. The rear trucks of the tank car ran over him, causing his death.

The distance between the front and rear trucks of the car was approximately 20 feet, thus the distance from the point where the rear trucks were at the time the front trucks left the rail to the point where deceased was killed, which represents the distance traveled by the car after derailment and before the infliction of the fatal injury, was about 60 feet.

The plaintiff in this action asserted her right to recover upon two theories: First, that the derailment was the result of the negligence of the defendant in the maintenance of its track and roadbed at the point where decedent lost his life; and, second, that a proper and prompt application of brakes by the engineer would have stopped the car before the rear truck reached the point where deceased was killed; that either the brakes were defective or the engineer negligently failed to properly and promptly apply the same.

In support of the first theory, evidence was introduced to show that at and adjacent to the point of derailment the track was rough and the ties were rotten. It was also shown that some of the ties were loose in the roadbed, which had washed away around such ties allowing the rails to give. It was more specifically shown that at the point of derailment a smaller or lighter rail had been laid between two heavier rails leaving a variance at the point of juncture of from 1/8th to 1/4th inch. Similarly it was shown that a few inches from the point of derailment there was a "blister" on one of the rails, which defect is described in the evidence as a point on the rail where the smooth surface has been worn off.

Some of the evidence just reviewed was disputed. But, notwithstanding the dispute upon these points, the pertinent fact remains that the car trucks left the track at this point, an unusual occurrence which in itself lends no color to the view that the track was properly constructed or maintained.

In support of her second theory, plaintiff introduced evidence tending to establish that a proper and prompt application of properly maintained brakes would have stopped the derailed car almost immediately. This evidence was likewise disputed. However, since the verdict and judgment in the trial court were for the plaintiff, we are not here concerned with disputes in the evidence. Our search is for prejudicial error in the trial of the case, and we must be satisfied with the proof offered if there is sufficient competent evidence to support the verdict, regardless of conflicting evidence to the contrary.

The first contention of the defendant is that the trial court should have sustained defendant's demurrer to plaintiff's evidence and should have instructed the jury to return a verdict for the defendant.

Since three theories of primary negligence are involved in this case, the defendant divides its argument under this contention into three divisions, or subheads, namely, that: "(a) Deceased assumed the risk of alleged defects in the track; (b) no evidence of negligence of engineer in failing to stop; this was admitted by plaintiff; incompetent evidence admitted as to distance engine and car could have stopped; any negligence complained of not the proximate cause of deceased's death; (c) no evidence of defective

brake system in violation of United States laws relied on by plaintiff."

We shall first consider the argument of defendant that the deceased assumed the risk of the alleged defect in the tracks.

Under the Federal Employers' Liability Act an employee assumes the ordinary risks and hazards of his occupation. It is, however, one of the primary duties of a railroad company to use due care in providing and maintaining a reasonably safe place, safe appliances, and safe equipment to be used by its employees. The risk of the company's negligent failure to perform this duty is not assumed by an employee unless and until he becomes aware of his employer's failure or unless such failure is so plainly observable that it must be presumed to have been within the knowledge of the employee. C., R. I. & P. Ry. Co. v. King, 165 Okla. 169, 25 P. (2d) 304 (McNeill, J. 1st sly.); St. L.-S. F. Ry. Co. v. Stuart, 173 Okla. 221, 47 P. (2d) 177 (rules reviewed page 227, Okla., page 184, Pac. Rep.); Philadelphia & R. Ry. Co. v. Marland, 239 Fed. 1 (see page 7).

If, in this character of case, the evidence and the inferences to be drawn therefrom are such that but one conclusion may be drawn therefrom, namely, that the employee has assumed the risk, to which his injury or death is attributable, the question involved is one of law and a verdict may be directed for the defendant. However, if the evidence is conflicting on material points or conflicting inferences on such points may reasonably be drawn from the proven facts, the question is one of fact and should be submitted to the jury under appropriate instructions. Thus the question of whether a particular hazard or risk was known to an employee or was so plainly observable as to create a presumption of knowledge may be and usually is one of fact. St. L.-S. F. Ry. Co. v. Stuart, supra, page 227 of Okla. Rep., page 184, second column, of 47 P. (2d); Philadelphia & R. Ry. Co. v. Marland, supra.

In support of its contention that the deceased had assumed the risk, the defendant introduced evidence showing that for a long time prior to the accident the deceased had worked in the yards where it occurred. It is argued that his familiarity with the yard over a long period of time indicates that he must have known of the defective condition of the tracks at the point where the accident occurred. It does not appear that the deceased made a detailed inspection of the track at this point at any time immediately preceding the date of his death. The evidence introduced and relied upon by the defendant

is strongly indicative that the deceased did know that the track at this and other points in the yard was in a rough condition. However, we are unable to hold as a matter of law that the evidence thus introduced conclusively established or even strongly indicated that the deceased had knowledge of the peculiar and particular defects existing in the track as heretofore described in this opinion. On the contrary, it is a fair inference from the evidence that rough points in the track such as would be observed by a switchman in conducting his duties do not necessarily or ordinarily cause derailments. Under the evidence the question of whether the defective nature of the equipment was known to the deceased was one of fact properly submitted to the jury by the trial court.

The next two subdivisions of defendant's first contention relate to alternative explanations of the reason that the engine and tank car were not promptly stopped by the engineer. It is asserted in subdivision (d) that the absence of evidence of negligence on the part of the engineer was admitted by the plaintiff. The alleged admission is asserted to have occurred in the opening statement on the part of plaintiff's attorney. The opening statement is not quoted in the record. However, it was subsequently referred to in a conversation between the court and counsel, which conversation was transcribed therein. According to this conversation counsel for the plaintiff in his opening statement advised the jury, in substance, that it was more probable that the evidence would show that the failure of the engine and car to stop promptly was due to defective brakes than that it was due to fault on the part of the engineer. We are unable to construe the opening statement as reflected by the conversation contained in the record as an admission that the engineer was not negligent. It was merely a suggestion by plaintiff's counsel as to what he thought would be the more rational conclusion from the evidence which he anticipated would be offered.

The alleged admission was called to the attention of the trial court immediately after the opening statement, when that statement, which is not reported, was fresh in the mind of the trial court. A motion was then made by the defendant to exclude from the case any element based upon the alleged negligence of the engineer. The court then and upon consideration of what had actually been said in the opening statement overruled and denied the request.

We think counsel for the defendant have misconstrued the record in asserting in posi-

tive terms that the alleged admission was in fact made. At least the record does not sufficiently support the contention to merit further discussion.

It is also asserted as a part of subhead (b) that incompetent evidence was admitted as to the distance in which the engine and car could be stopped. The alleged incompetent evidence referred to is very briefly treated in the brief of defendant. Particular reference is made to the testimony of an expert witness given in response to a hypothetical question. It is asserted that the hypothetical question or questions involved did not embrace all of the facts and should therefore have been excluded. We have examined this alleged improper testimony and find no prejudicial error in the admission thereof. As an example of the testimony of which complaint is made, counsel for the plaintiff in framing a question as to how ouick the car could have been stopped described the car as "an empty oil tank car." Objection was made to this question in part upon the ground that counsel did not give the weight of the empty oil tank car. It does not appear either in examination or cross-examination of this or any other witness that there is sufficient difference in the weight of empty oil tank cars to have made any material difference in the answer given to the interrogatory propounded.

We shall not undertake to review other alleged inaccuracies in the hypothetical questions. It is sufficient to observe that a careful examination of this particular phase of the testimony discloses no prejudicial error whatsoever.

Under subhead (c) it is asserted that there was no evidence whatever of a defective brake system. An examination of the record upon this point discloses that testimony was introduced tending to show that the engineer did apply his brakes promptly; that proper and effective brakes when so applied would stop the engine and car almost immediately and that as a matter of fact the car did not stop for about 100 feet after it was derailed. We think in view of this proof that the question of whether the brakes were defective was one of fact for the consideration of the jury. Spokane & Inland Empire R. R. Co. v. Campbell, 60 L. Ed. 1125, 241 U. S. 497; Union Pacific R. R. Co. v. Huxoll, 62 L. Ed. 455, 245 U. S. 535.

The causal connection between the failure of the engine with the tank car attached to stop and the fatal injury received by the deceased was established by the proof that the car traveled some 60 feet after leaving the rails before it ran over the deceased. Union Pacific R. R. Co. v. Huxoll, supra. The evidence introduced warrants the conclusion that this failure to stop was due either to the negligence of the engineer in promptly and properly applying the brakes or to the existence of a defective brake system.

The trial court properly decided that under the evidence introduced the issues above discussed should be presented to the jury. It follows that no error was committed in overruling the defendant's demurrer to the plaintiff's evidence, and similarly, the defendant's request for a peremptory instruction advising the jury to return a verdict for the defendant was properly denied.

The defendant also complains in this case of the manner in which the issues were submitted to the jury and directs our attention to a number of instructions which were requested by it and refused by the trial court, and also a number of instructions that were given by the trial court to which the defendant excepted. We have carefully examined the requested and the given instructions and find no prejudicial error in the action taken by the lower court. We deem it unnecessary to consider in detail all of the complaints made concerning the instructions of the court.

There is, however, one phase of the instructions which merits discussion in this opinion. The trial court advised the jury, in substance, that by virtue of the "safety appliance act" the laws of the United States require that railways engaged in interstate commerce must use and operate in the moving of interstate traffic only such locomotive engines as are equipped with power driving-wheel brakes. In this connection the jury was advised that if the brakes on the engine operated by the defendant were defective and out of repair at the time of the accident and that the defective condition was the contributing, proximate cause of the accident, a verdict should be returned for the plaintiff. The trial court thus authorized the jury, in the event the jury found the fatal accident was due to defective brakes, to disregard the comparative defense of contributory negligence and the defense of assumption of risk.

The basis of the instruction given was sections 53 and 54, USCA, Title 45 which are, respectively, sections 3 and 4, 35 Stat. 66. Section 53, supra, provides that no injured or killed employee shall be held to have been guilty of contributory negligence in any case where the violation by a common carrier of any statute enacted for the safety of the

employee contributed to the injury or death of such employee, and section 54, supra, by similar provision deprives the common carrier in such cases of the defense of assumption of risk.

The instruction is also based upon section 1 USCA, Title 45 (sec. 1, 27 Stat. 531), which provides:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the twin-brake system, or to run any train in such traffic that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose."

It is urged by the defendant in connection with this instruction and the statute upon which it is based that the provision of the safety appliance act above quoted has no application whatever to switching operations; that inasmuch as the engine and car involved in this case were engaged in switching operations at the time of the accident, the instruction should not have been given. The contention of the defendant is based upon the cases of U. S. v. Erie Ry. Co., 237 U. S. 402, 59 L. Ed. 1019, U. S. v. Texas & N. O. R. Co., 13 Fed. (2d) 429, and U. S. v. Southern P. Ry. Co., 54 Fed. (2d) 89. The cases relied upon by the defendant deal with the requirements of the above-quoted statute relating to train brakes and hold, in substance, that such provision of the statute does not apply to switching operations. In other words, according to these decisions, the train brakes need not be coupled when cars are being switched. Neither of the decisions referred to deals with that portion of the statutory provision requiring that locomotive engines used in moving interstate traffic be equipped with power driving-wheel brakes. Neither of the decisions excludes a switching engine from the requirement that such locomotives be so equipped.

In this case there is no contention by the plaintiff that the power brakes on the car should have been attached to the engine. No attempt was made to hold the railway company liable because such brakes were not so attached. The charging part of the court's instruction herein involved deals only with that feature of the safety appliance law requiring that the locomotive itself should be so equipped and that the brakes thereon should not be defective. It seems clear from an examination of the provisions of the statute itself that the term "locomotive engine" as used in the first part of the statute includes switch engines as well as train engines. If there should be any doubt upon this point, we think that doubt is disposed of by the case of Union Pac. Ry. Co. v. Huxoll, supra, wherein a railroad employee was killed by a switch engine and the basis of the action was the failure to have the power brakes in working order as required by the safety appliance act. The judgment against the company was sustained in that case and the basis of liability therein approved. Thus the highest court of our land has definitely held that a switch engine is required under the safety appliance act to be equipped with power driving-wheel brakes. Following that decision and in view of what we believe to be the manifest meaning of the act itself, we hold that the provision under consideration requires such equipment on switch engines engaged in moving interstate commerce. It follows that the instruction complained of was properly given in the trial of this case. In further approval of the instruction, it is proper to mention at this point that if the equipment required by the safety appliance act was in fact defective, it is immaterial whether the defective condition was attributable to the negligence of the company. See Spokane & Inland Empire R. R. Co. v. Campbell, supra.

It is also urged by the defendant that the judgment rendered in the trial court in the sum of $15,000 was excessive and that the same should be reduced by requiring a further remittitur. In connection with this contention the record reflects that although the deceased was 62 years of age, he had a life expectancy of 12.86 years as reflected by the mortality table and that he could reasonably expect about eight more years of active service as a switchman. The judgment, being compensatory in nature, is no doubt liberal in amount. However, we do not feel that it is proper in this case for us to say that it is excessive in the sense that it cannot be sustained as a matter of law. It is to be observed that this feature of the case was given careful consideration in the trial court, and that the verdict of the jury, which was for $20,000, was reduced to the sum for which judgment was ultimately entered. We therefore decline to disturb the amount of the judgment by requiring a remittitur.

We do not feel in this case that we are justified in extending our remarks to all of the complaints made in connection with the instructions. We have endeavored to treat in this opinion all of the contentions of the

defendant which are sufficiently close to warrant a discussion. On the whole the record before us discloses the case was closely tried by the parties and fairly considered by the trial court and that the instructions given submitted the issues to the jury in a fair and impartial manner. The decisive questions were questions of fact. The jury found the issues in favor of the plaintiff, and we are unable to say that they did not rightly do so, or that they were not properly advised upon the law. The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS and CORN, JJ., concur.